UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| TARYN CAMARA, | : | |
|     PLAINTIFF | : | |
| | : | |
| v. | : | C.A. No. 1:21-cv-10117-RWZ |
| | : | JURY TRIAL DEMANDED |
| CITY OF FALL RIVER, by and Through | : | |
| Its Treasurer, Ian P. Schachne; | : | |
| FALL RIVER EDUCATORS' | : | |
| ASSOCIATION, INC.; and | : | |
| MASSACHUSETTS TEACHERS | : | |
| ASSOCIATION, | : | |
|     DEFENDANTS. | : | |

**FIRST AMENDED COMPLAINT**

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, Plaintiff Taryn Camara hereby amends the Complaint filed on January 22, 2021 to add the Fall River Educators' Association, Inc. as a defendant to this action. Camara alleges the following:

### The Parties

1. Plaintiff Taryn Camara ("Camara") is an individual, female person of legal age, who, at all times relevant to this action, was an employee of Defendant City of Fall River, a member of the Massachusetts Teachers Association and its local chapter the Fall River Educators' Association, Inc., and a resident of the Commonwealth of Massachusetts. At all times relevant to this action, Camara was an "employee" within the meaning of 29 U.S.C. § 152(3) and Mass. Gen. Laws c. 150A; and a "teacher" within the meaning of Mass. Gen. Laws c. 71 § 42.

2. Defendant City of Fall River is a municipal corporation and is being sued by and through its Treasurer Ian P. Schachne. At all times relevant to this action, Defendant City of Fall River served as Camara's employer and controlled the terms and conditions of her employment. At all times relevant to this action, Defendant City of Fall River maintained a principal place of business at One Government Center, Fall River, MA 02721. At all times relevant to this action, Defendant City of Fall River was an "employer" within the meanings of 29 U.S.C. § 152(2) and Mass. Gen. Laws c. 150A and was "engaged in an industry affecting commerce" within the meaning of 29 U.S.C. § 142(1).

3. Defendant Fall River Educators' Association, Inc. ("FREA"), is non-profit corporation organized under the laws of the Commonwealth of Massachusetts and is authorized by the Massachusetts Secretary of State's Office to conduct business within the state. At all times relevant to this action, Defendant FREA maintained a principal place of business located at 178 Fourth St., Fall River, MA 02721. At all times relevant to this action, Defendant FREA operated, managed, and controlled the local chapter of Defendant Massachusetts Teachers

          Association of which Camara was a member and was a "labor organization" within the meanings of 29 U.S.C. § 152(5) and Mass. Gen. Laws c. 150A.  Defendant FREA is an affiliate, agent, and local chapter of Defendant Massachusetts Teachers Association and is given actual authority by Defendant Massachusetts Teachers Association to represent and bargain for union teacher members in the Fall River Public School System.

4. Defendant Massachusetts Teachers Association ("MTA"), is non-profit corporation organized under the laws of the Commonwealth of Massachusetts and is authorized by the Massachusetts Secretary of State's Office to conduct business within the state.  At all times relevant to this action, Defendant MTA maintained a principal place of business located at 2 Heritage Drive, 8th Floor, Quincy, MA 02171-2119.  At all times relevant to this action, Defendant MTA operated, managed, and controlled the labor union of which Camara was a member and was a "labor organization" within the meanings of 29 U.S.C. § 152(5) and Mass. Gen. Laws c. 150A.  At all times relevant to this matter, Defendant MTA gave actual authority to Defendant FREA to represent and bargain for union teacher members in the Fall River Public School System.

## Jurisdiction and Venue

5. The jurisdiction of this Court is invoked pursuant to 29 U.S.C. § 185(c).

6. This Court's exercise of supplemental jurisdiction with respect to Plaintiff's state law claims is warranted because they are so related to Plaintiff's federal claim that they form part of the same case or controversy.

7. Venue is in invoked pursuant to 29 U.S.C. § 185(a).  Venue is proper in this Court because each Defendant maintains a principal place of business in the Commonwealth of Massachusetts.

8. Personal jurisdiction exists over the Defendants in that they maintain sufficient minimal contacts in the Commonwealth of Massachusetts.  Specifically, Defendants engage in systematic and continuous activity in the Commonwealth of Massachusetts.  Moreover, the actions complained of herein occurred in the Commonwealth of Massachusetts.

## Factual Allegations

9. Camara has been a licensed educator for approximately twenty-eight (28) years.

10. The City of Fall River has employed Camara for approximately twenty-two (22) years as an expert Special Education Teacher, widely liked and universally respected by all stakeholders and observers.

11. During Camara's exemplary employment with the City of Fall River — until her wrongful termination in July 2020 — she had never been disciplined, and her work performance was exemplary.

12. Camara's employment record confirms that she frequently and regularly received important accolades from parents, students, former students, and colleagues.

**The June 5, 2020 Facebook Post**

13. Camara is a registered Republican, and she holds conservative political beliefs.

14. On June 5 2020, Camara shared on her private Facebook page outside of work a June 3, 2020 video of black conservative commentator and political activist Candice Owens ("Owens") discussing police brutality and the death of George Floyd (the "Candice Owen video").

15. In the Candice Owens video, Owens argues that in the United States, black men killing other black men is a more significant problem than police brutality and that she believes that the Black Lives Matter movement (the "BLM Movement") was taking the focus away from that issue as well as other problems within the black community.

16. Several of Camara's Facebook friends who are also teachers posted comments on her Facebook post and a debate ensued among them about police brutality and the BLM Movement.

17. One of Camara's Facebook friends, Amy Francis ("Francis"), posted a comment: "there is only one race, homo sapiens."

18. Camara responded to Francis' comment:

> **There is one supreme race and gender and that is the white man — I also can't help but notice that race and gender were the ones leading most of the riots! Lastly if you look at the stats more black men have died from other black men than white men — so there lies two problems! But there are far more inequalities that will never change!**

(the "June 5, 2020 Comment").

19. Camara composed the June 5, 2020 Comment using the voice-to-text feature on her Facebook phone app while multi-tasking at home, and she hit the send button without carefully reviewing the language of the comment.

20. Camara did not look at her Facebook page for approximately an hour while she completed other tasks while at home.

21. When Camara viewed her Facebook page an hour after posting the June 5, 2020 Comment, she noticed that several of her Facebook friends expressed concern over the first part of her comment ("There is one supreme race and gender and that is the white man") believing that some people could misconstrue this as a racist comment, which they knew was out of character for Camara.

22. Camara explained in subsequent comments on Francis' thread that by making this statement, she was not expressing the opinion that the white man **is** the supreme race and gender, but rather, that the white man merely **believes** he is the supreme race and gender.  Camara's explanation is supported by her statement: "I also can't help but notice that race and gender were the ones leading most of the riots!," (emphasis added) meaning if white men are so superior, why are they the ones behind all the rioting?

23. Camara's subsequent clarification helped assuage some of the concerns of those who believed that her comment may be taken out of context.  In fact, Camara's Facebook friend Jesse Cohen ("Cohen") wrote:  "The way that first sentence is constructed it came across to me like your opinion which would be very alarming.  I'm glad I was confused."

24. Camara attempted to edit her comment so there would be no further misunderstanding, however, before she was able to do so, Francis deleted the thread.

25. Unfortunately, someone who had access to Camara's Facebook page made a "screen shot" of Francis' thread that included the June 5, 2020 Comment before it was deleted and before Camara could edit it to clarify her intent and sent it to her employer.

26. Later that same day, after Camara's employer learned about the June 5, 2020 Facebook Comment, it immediately placed her on paid administrative leave at 10:00 PM that evening pending an investigation.

27. On June 8, 2020, Camara submitted a written statement to her employer regarding the June 5, 2020 Facebook Comment in which she explained that she used the voice-to-text feature on her Facebook phone app when she made the comment and, as a result, words were omitted from the comment that would have made her intentions clearer.

28. On Friday, June 12, 2020, the City of Fall River sent Camara a pre-termination letter advising her that her employment was being terminated for "conduct unbecoming a teacher."

29. Upon information and belief, the City of Fall River never conducted a meaningful investigation into the events leading to Camara's termination.  For example, the City of Fall River never interviewed Cohen and asked him whether or not he believed that Camara was a racist, held racist views or made a racist comment on June 5, 2020.

30. The City of Fall River also never interviewed Camara before it made the decision to terminate her employment.

31. On June 25, 2020, a pre-termination hearing was held at the City of Fall River's Office of the Superintendent.  Present at this meeting were:  Camara, Matt Malone, Superintendent of the Fall River Public Schools, and a lawyer from Camara's union, the Massachusetts Teachers Association, who was there to advocate on Camara's behalf.

32. The purpose of the June 25, 2020 pre-termination hearing was to provide Camara with an opportunity to explain her side of the story — that there was no racist intent behind the June 5, 2020 comment and that when taking the first part of her comment about white men in complete isolation, the comment is misleading and inaccurate.

33. At the June 25, 2020 pre-termination hearing, Camara's lawyer presented the City of Fall River with copies of Camara's Facebook post including the comments she made clarifying her intentions as well as comments from others who stated that they did not believe Camara intended the comment to be racist.

34. At the June 25, 2020 pre-termination hearing, Superintendent Malone was very dismissive of Camara's lawyer's presentation and acted rudely and condescendingly to her going as far as asking her which law school she attended.

35. On July 1, 2020, the City of Fall River terminated Camara's employment for "conduct unbecoming a teacher."

36. On July 22, 2020, Camara was notified by letter that the Executive Board of Defendant FREA had decided "not to fund and support the arbitration of [Camara's] termination." (the "July 22, 2020 letter")

37. The July 22, 2020 letter provided Camara with no explanation for its decision.

38. Upon information, Defendant MTA had knowledge of Defendant's FREA's decision not to represent Camara at arbitration and supported and ratified it.

39. Without union representation, Camara would still be able to appeal her termination pursuant to Mass. Gen. Laws c. 71 § 42, however, at great financial expense to her — she would be solely responsible for paying for the cost of the arbitration as well as the cost of hiring a private attorney.

40. Defendants' actionable conduct complained of herein proximately caused Camara to suffer severe economic losses including a loss of wages and benefits, substantial out-of-pocket expenses including attorneys' fees and costs, grave and substantial compensatory damages, including personal emotional pain, personal suffering, personal inconvenience and discomfort, mental anguish, extreme and severe emotional distress with resulting physical and emotional manifestations, loss of enjoyment of life, humiliation, embarrassment, fear and discomfort triggered by suffering a damage to her reputation, anguish, frustration, and other severe non-pecuniary losses, now, and in the future, as well as future pecuniary losses.

## CLAIMS AGAINST DEFENDANT FALL RIVER EDUCATORS' ASSOCIATION, INC.

### COUNT I
### BREACH OF THE DUTY OF FAIR REPRESENTATION
### VIOLATION OF SECTION 301 OF THE LABOR MANAGEMENT RELATIONS ACT, 29 U.S.C. § 185

41. Plaintiff hereby incorporates by reference paragraphs 1-40 of this Complaint as though fully set forth herein.

42. At all times relevant to this matter, Defendant FREA, as the exclusive bargaining agent, had a duty to fairly and adequately represent the interests of all of those for whom it negotiates and contracts, not only those who are members, but all those who are part of the bargaining unit, which includes the filing of grievances.

43. At all times relevant to this matter, Defendant FREA, as the exclusive bargaining agent, had the sole power to invoke the grievance procedure on behalf of Camara.

44. On July 22, 2020, Camara was notified by letter that the Executive Board of Defendant FREA had decided "not to fund and support the arbitration of [Camara's] termination," providing no explanation for its decision.

45. Defendant FREA's decision to refuse to process Camara's grievance was arbitrary, capricious, discriminatory or made in bad faith.

46. Defendant FREA's conduct as described herein constitutes a breach of the duty of fair representation.

    WHEREFORE, Plaintiff has been harmed thereby.

### COUNT II
### BREACH OF THE DUTY OF FAIR REPRESENTATION
### VIOLATION OF MASS. GEN. LAWS C. 150A § 4A

47. Plaintiff hereby incorporates by reference paragraphs 1-46 of this Complaint as though fully set forth herein.

48. At all times relevant to this matter, Defendant FREA, as the exclusive bargaining agent, had a duty to fairly and adequately represent the interests of all of those for whom it negotiates and contracts, not only those who are members, but all those who are part of the bargaining unit, which includes the filing of grievances.

49. At all times relevant to this matter, Defendant FREA, as the exclusive bargaining agent, had the sole power to invoke the grievance procedure on behalf of Camara.

50. On July 22, 2020, Camara was notified by letter that the Executive Board of Defendant FREA had decided "not to fund and support the arbitration of [Camara's] termination, providing no explanation for its decision.

51. Defendant FREA's decision to refuse to process Camara's grievance was arbitrary, capricious, discriminatory or made in bad faith.

52. Defendant FREA's conduct as described herein constitutes a breach of the duty of fair representation.

    WHEREFORE, Plaintiff has been harmed thereby.

**CLAIMS AGAINST DEFENDANT MASSACHUSETTS TEACHERS ASSOCIATION**

**COUNT III**
**BREACH OF THE DUTY OF FAIR REPRESENTATION**
**VIOLATION OF SECTION 301 OF THE LABOR MANAGEMENT RELATIONS ACT, 29 U.S.C. § 185**

53. Plaintiff hereby incorporates by reference paragraphs 1-52 of this Complaint as though fully set forth herein.

54. At all times relevant to this matter, Defendant MTA, as the exclusive bargaining agent, had a duty to fairly and adequately represent the interests of all of those for whom it negotiates and contracts, not only those who are members, but all those who are part of the bargaining unit, which includes the filing of grievances.

55. At all times relevant to this matter, Defendant MTA, as the exclusive bargaining agent, had the sole power to invoke the grievance procedure on behalf of Camara.

56. In July 2020, Defendant MTA's affiliate Defendant FREA voted that it would not pursue Camara's grievance to arbitration and provided no explanation for its decision.

57. Upon information, Defendant MTA had knowledge of Defendant's FREA's decision not to represent Camara at arbitration and ratified it.

58. Upon information, Defendant MTA supported and ratified Defendant's FREA's decision not to represent Camara at arbitration.

59. Defendant MTA's ratification of Defendant's FREA's decision to refuse to process Camara's grievance was arbitrary, capricious, discriminatory or made in bad faith.

60. Because Defendant FREA is an affiliate, agent, and local chapter of Defendant MTA, which had the actual authority to provide union representation to MTA members like Camara, Defendant MTA support and ratification of Defendant FREA's unlawful conduct within the scope of its authority renders Defendant MTA vicariously liable to Camara.

61. Defendant MTA's conduct as described herein constitutes a breach of the duty of fair representation.

    WHEREFORE, Plaintiff has been harmed thereby.

## COUNT IV
## BREACH OF THE DUTY OF FAIR REPRESENTATION
## VIOLATION OF MASS. GEN. LAWS C. 150A § 4A

62. Plaintiff hereby incorporates by reference paragraphs 1-61 of this Complaint as though fully set forth herein.

63. At all times relevant to this matter, Defendant MTA, as the exclusive bargaining agent, had a duty to fairly and adequately represent the interests of all of those for whom it negotiates and contracts, not only those who are members, but all those who are part of the bargaining unit, which includes the filing of grievances.

64. At all times relevant to this matter, Defendant MTA, as the exclusive bargaining agent, had the sole power to invoke the grievance procedure on behalf of Camara.

65. In July 2020, Defendant MTA's affiliate Defendant FREA voted that it would not pursue Camara's grievance to arbitration and provided no explanation for its decision.

66. Upon information, Defendant MTA had knowledge of Defendant's FREA's decision not to represent Camara at arbitration and ratified it.

67. Upon information, Defendant MTA ratified Defendant's FREA's decision not to represent Camara at arbitration.

68. Defendant MTA's ratification of Defendant's FREA's decision to refuse to process Camara's grievance was arbitrary, capricious, discriminatory or made in bad faith.

69. Because Defendant FREA is an affiliate, agent, and local chapter of Defendant MTA, which had the actual authority to provide union representation to MTA members like Camara, Defendant MTA ratification of Defendant FREA's unlawful conduct within the scope of its authority renders Defendant joint and severally liable to Camara.

    WHEREFORE, Plaintiff has been harmed thereby.

## CLAIM AGAINST DEFENDANT CITY OF FALL RIVER

### COUNT V
### BREACH OF CONTRACT FOR VIOLATION OF THE COLLECTIVE BARGAINING AGREEMENT

70. Plaintiff hereby incorporates by reference paragraphs 1-69 of this Complaint as though fully set forth herein.

71. At all relevant times to this matter, Defendants MTA and Defendant City of Fall River were parties to a Collective Bargaining Agreement (the "CBA").

72. Upon information and belief, the CBA provides that the employer may only terminate a member's employment for "good cause."

73. Defendant City of Fall River did not have "good cause" to terminate Camara because the conduct for which she was fired — engaging in political speech — occurred outside of the workplace, it did not pertain to any matter in the workplace, and it did not pertain to or involve her job duties as a teacher.

74. Upon information and belief, Defendant City of Fall River did not terminate or discipline in any way other similarly-situated employees who engaged in non-work-related, political speech outside of the workplace.

75. Defendant City of Fall River's conduct as described herein constitutes a breach of contract for violation of the CBA.

WHEREFORE, Plaintiff has been harmed thereby.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Honorable Court grant the following relief:

1. An order directing Defendant City of Fall River to place Camara in the position Camara would have occupied but for Defendant's unlawful treatment of Camara, and make Camara whole for all earnings and benefits Camara would have received but for Defendant's unlawful treatment, including, but not limited to, wages, employment benefits, including an order requiring that Defendant reinstate Camara to an appropriate position without further violation of her rights or retaliation;

2. An award of compensatory damages;

3. An order directing the Defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful labor practices are eliminated and do not continue to affect Camara's employment opportunities;

4. A finding that Defendant Fall River Educator's Association's conduct as described herein violates 29 U.S.C. § 185 and Mass. Gen. Laws c. 150A § 4A;

5. A finding that Defendant Massachusetts Teachers Association is vicariously liable for the unlawful actions of its agent, affiliate and local chapter Defendant Fall River Educators' Association, Inc.

6. A finding that the Defendants stand liable to Camara for an award of her reasonable attorneys' fees, litigation costs and other costs of this action, together with a post-trial hearing to determine the amount of Camara's reasonable attorneys' fees taxable to the Defendants, along with a determination of Camara's litigation costs and expenses taxable to the Defendants;

7. An appropriate award of pre-judgment interest on all sums recovered; and

8. Such other and further relief as this Court deems just and proper.

## Demand for Jury Trial

Plaintiff claims trial by jury on all issues so triable.

TARYN CAMARA
By Her Attorney,

/s/Mark P. Gagliardi
Mark P. Gagliardi (MA BBO#657622)
LAW OFFICE OF MARK P. GAGLIARDI
201 Wayland Avenue, Suite 8
Providence, RI 02906
(401) 277-2030
(401) 277-2021 (fax)
mark@markgagliardilaw.net

Date: February 10, 2021